Citation Nr: 1229615 
Decision Date: 08/28/12 Archive Date: 09/05/12

DOCKET NO. 10-44 175A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to a disability evaluation in excess of 10 percent for tinea barbae (infection of the skin in the facial area). 

2. Entitlement to an increased disability evaluation for a generalized anxiety disorder, to include a compensable disability evaluation prior to January 6, 2011, and a disability evaluation in excess of 30 percent as of January 6, 2011. 

3. Entitlement to a compensable disability evaluation for bilateral hearing loss. 


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran, his spouse and his daughter
ATTORNEY FOR THE BOARD

B. R. Mullins, Associate Counsel


INTRODUCTION

The Veteran had active service from July 1943 to December 1945. The Veteran was awarded the Purple Heart for his service in World War II. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi, denying the claims currently on appeal. In a March 2012 rating decision, the Veteran's disability evaluation for his generalized anxiety disorder was increased to 30 percent, effective as of January 6, 2011. Since this grant did not constitute a full grant of the benefits sought on appeal, this claim is still in appellate status. AB v. Brown, 6 Vet. App. 35, 39 (1993). 

The Veteran testified at a video conference hearing before the undersigned Veterans Law Judge in July 2012. A written transcript of this hearing has been prepared and incorporated into the evidence of record. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issue of entitlement to a disability evaluation in excess of 10 percent for tinea barbae of the face is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.




FINDINGS OF FACT

1. Throughout the pendency of this claim, the Veteran's generalized anxiety disorder has been manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to symptomatology such as depressed mood, anxiety, nervousness and impaired sleep; it has not been manifested at any time by symptomatology so severe as to result in occupational and social impairment with reduced reliability and productivity. 

2. The Veteran's bilateral hearing loss is characterized by pure tone threshold averages of 44 decibels (dB) for the right ear and 55 dB for the left ear, with speech recognition scores of 90 percent in the right ear and of 82 percent in the left ear. 


CONCLUSIONS OF LAW

1. The criteria for establishing entitlement to a 30 percent disability evaluation for a generalized anxiety disorder, prior to January 6, 2011, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.1, 4.7, 4.40, 4.130, Diagnostic Code 9400 (2011).

2. The criteria for establishing entitlement to a disability evaluation in excess of 30 percent for a generalized anxiety disorder, at any time during the pendency of this claim, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 4.1, 4.7, 4.40, 4.130, Diagnostic Code 9400 (2011).

3. The criteria for establishing entitlement to a compensable disability evaluation for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.385, 4.85, 4.86 (2011). 



 (CONTINUED ON NEXT PAGE)
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify

VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011). 
 
Proper notice from VA must inform the Veteran of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the Veteran is expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

For an increased disability rating claim, VA is required to provide the Veteran with generic notice - that is, the type of evidence needed to substantiate the claim. This includes evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). In the present case, all necessary notice was provided to the Veteran prior to the initial adjudication of his claims in letters dated November 2008 and December 2008. 

Under these circumstances, the Board finds that the notification requirements have been satisfied as to both timing and content. Adequate notice was provided to the Veteran prior to the transfer and certification of his case to the Board that complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b). 

Duty to Assist

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service medical records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). VA obtained the Veteran's service treatment records. Also, the Veteran received multiple VA medical examinations in this case, with his most recent examinations taking place in February 2012. VA has obtained these records as well as the records of the Veteran's outpatient treatment with VA. Copies of private treatment records have also been associated with the claims file. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Relevant Laws and Regulations

Disability ratings are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two ratings will be applied, the higher rating will be assigned if the disability picture more closely approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7 (2011). 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). See also 38 C.F.R. §§ 4.1, 4.2 (2011). As such, the Board has considered all of the evidence of record. However, the most probative evidence of the degree of impairment consists of records generated in proximity to and since the claim on appeal. 

As is the case here, where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Anxiety Disorder

The Veteran was originally granted service connection for an anxiety disorder in a July 1948 rating decision. A noncompensable (0 percent) disability evaluation was assigned, effective as of June 16, 1948. In November 2008, VA received a claim from the Veteran seeking a higher disability evaluation for his service-connected nervous condition. This claim was denied in an August 2009 rating decision. VA received a timely notice of disagreement from the Veteran in August 2009, but the noncompensable disability evaluation was continued in an October 2010 statement of the case. The Veteran appealed this decision to the Board in November 2010. In a March 2012 supplemental statement of the case (SSOC), the Veteran's disability evaluation was increased to 30 percent, effective as of January 6, 2011. Since this grant did not constitute a full grant of the benefits sought on appeal, this claim is still in appellate status. AB v. Brown, 6 Vet. App. 35, 39 (1993). 

According to an October 2008 VA outpatient treatment record, the Veteran was complaining of short-term memory loss. He also described mild depression with no suicidal ideation. The examiner noted that the Veteran's wife concurred that he was absent minded. However, he was good with long-term memory. 

The record also contains a private treatment record from HeartSouth dated in December 2007. According to this record, the Veteran was experiencing memory problems. A March 2010 record from this facility also noted problems with short-term memory. 

The Veteran was also afforded a VA psychiatric examination in November 2008. It was noted that the Veteran had been married for 60 years and that he had a good relationship with his children and grandchildren. The Veteran reported getting nervous and upset, particularly when he had problems with his memory or recall. He also said he sometimes had suicidal ideation because he felt like he was not serving a purpose any longer. The Veteran reported that he suffered from memory problems but that Alzheimer's disease had been essentially ruled out. The Veteran reported that he had what appeared to be vascular issues surrounding his cognitive functioning. On examination, the Veteran was alert and attentive with appropriate speech. He was oriented to person, time and place and there was no evidence of a perceptual disorder. The Veteran's affect was appropriate but he described his mood as being variable, feeling anxious and sad at times and angry at other times. Memory was grossly intact, although the Veteran did describe short-term memory issues. While he reported intermittent suicidal ideation, there was no plan or intent. He denied homicidal ideation and there was no abnormal behavior noted upon examination. The examiner concluded that the Veteran's judgment was fully intact and that he could maintain his activities of daily living without assistance. The examiner diagnosed the Veteran with a cognitive disorder and a depressive disorder. A Global Assessment of Functioning (GAF) score of 61 was assigned. The examiner concluded that the Veteran appeared to have some age-related decline in his cognitive functioning and that the type of change described by the Veteran was most likely associated with vascular issues. 

The Veteran was afforded another VA psychiatric examination in April 2009. He reported that he became nervous and upset, particularly when he had problems with his memory or recall. He also reported thoughts of death and suicide due to feeling like he was not serving a purpose anymore. Examination revealed the Veteran to be an alert individual who tracked the conversation adequately. However, he did have to be redirected a few times due to memory problems. Speech was appropriate and he was oriented to person, place and time. The Veteran described his mood as sometimes being anxious, sad or angry. The examiner described his affect as euthymic and appropriate to content and context. Memory functions were intact, aside from short-term memory impairment. The Veteran denied homicidal ideation, and there was no evidence of perceptual disorders or abnormal behavior. Judgment appeared to be intact and the Veteran was able to maintain his own activities of daily living without assistance. The examiner assigned Axis I diagnoses of a cognitive disorder and a depressive disorder. A GAF score of 61 was assigned at this time. The examiner further opined that the Veteran appeared to have an age-related decline in his cognitive functioning. 

The Veteran was afforded another VA psychiatric examination in March 2010. The Veteran reported feeling nervous and anxious and suffering from restless sleep. Examination revealed him to be clean and neatly groomed. Speech was unremarkable. The Veteran's affect was found to be appropriate and his mood was described as "up and down." The Veteran was oriented to person, time and place, and his thought processes and content were unremarkable. There were no delusions or hallucinations , and his judgment and insight were intact. There was also no inappropriate behavior on the part of the Veteran and he did not exhibit obsessive or ritualistic behavior, panic attacks, or suicidal/homicidal thoughts. There were no problems with the Veteran's activities of daily living. The Veteran's remote memory was described as mildly impaired and his recent memory as moderately impaired. The examiner concluded that the Veteran's memory problems were consistent with a vascular type cognitive disorder or dementia. Axis I diagnoses of depressive disorder and a cognitive disorder were assigned. The examiner assigned a GAF score of 60 and noted that the Veteran denied having lost any days of work due to his problems prior to his retirement. 

The Veteran was afforded an additional VA psychiatric examination in January 2011. The Veteran reported that he stayed anxious and was sad most of the time. He also reported frequent feelings of sadness and monthly vague thoughts of suicide. He denied any actual intent, focused thought or prior attempt. He also endorsed hopelessness about the future, poor sleep, memory problems and anxious and nervous feelings. It was noted that while the Veteran's social relationships were limited due to his physical limitations, he did have ongoing contact with his family and some of his friends. Speech was found to be spontaneous and clear, and the Veteran was appropriately dressed and pleasant. His affect was found to be constricted and his mood to be dysphoric. Attention was intact, however, and the Veteran was oriented to person, time and place. The Veteran's thought processes and content were unremarkable and he had no delusions or hallucinations. Judgment and insight were intact and the Veteran had good impulse control with no episodes of violence. He was also able to maintain minimal personal hygiene and there were no problems with his activities of daily living. There was some memory impairment, but the examiner felt that this was consistent with the Veteran's age. The examiner diagnosed the Veteran with a generalized anxiety disorder, depressive disorder and a cognitive disorder. The cognitive disorder was noted to have been diagnosed because of a vascular history. A GAF score of 55 was assigned for each diagnosis. 

The Veteran was most recently afforded a VA psychiatric examination in February 2012. Examination revealed a depressed mood, anxiety, chronic sleep impairment, mild memory loss, and impairment of short and long-term memory. The Veteran also exhibited circumstantial, circumlocutory or stereotyped speech. His speech was intermittently illogical, obscure or irrelevant, and he had difficulty in understanding complex commands. The examiner also concluded that the Veteran had impaired judgment, impaired abstract thinking, and a gross impairment in thought processes or communication. He also exhibited disturbances of motivation and mood and difficulty in adapting to stressful circumstances. The examiner also found evidence of disorientation to space, time and place and an intermittent inability to perform activities of daily living, including maintaining a minimal personal hygiene. The Veteran did not suffer from panic attacks, difficulty in establishing and maintaining effective relationships, suicidal or homicidal ideation, obsessional rituals or impaired impulse control. There was also no evidence of grossly inappropriate behavior, persistent delusions or hallucinations or a persistent danger of hurting himself or others. The examiner assigned an Axis I diagnosis of a generalized anxiety disorder. 

The examiner also assigned an Axis I diagnosis of a cognitive disorder, not otherwise specified. The examiner explained that the Veteran was more likely suffering from a vascular dementia because his cognitive deficiencies appeared to be moderate upon brief examination but his mood was generally bright. The examiner also assigned a GAF score of 50 due to the problems the Veteran was having with his daily functioning due to his declining cognitive functioning. A GAF score of 60 was assigned for the Veteran's generalized anxiety disorder alone. The examiner further explained that the Veteran suffered from symptoms of excessive worry, anxiety, restlessness, irritability, sleep disturbance, being easily fatigued, difficulty with concentration and muscle tension due to his service-connected generalized anxiety disorder. His symptomatology of impaired ability to learn new information or recall previously learned information and disturbances in functioning for things such as planning, organizing and sequencing, however, were related to his nonservice-connected cognitive disorder. Finally, the examiner concluded that the Veteran's disabilities resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily. 

The above evidence demonstrates that the Veteran is entitled to a disability evaluation of 30 percent for his service-connected psychiatric disorder prior to January 6, 2011. Under the General Rating Formula for Mental Disorders, a 30 percent evaluation is provided for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130. 

According to the October 2008 VA outpatient treatment record, the Veteran was exhibiting symptomatology of mild depression. The Veteran also endorsed nervousness upon examination in November 2008 with feelings of anxiousness and a variable mood. The Veteran again reported being nervous and anxious upon examination in March 2010. As noted above, a 30 percent rating is warranted for occupational and social impairment due to symptomatology such as depressed mood and anxiety. A 30 percent disability evaluation is also meant to compensate a Veteran who is still generally functioning satisfactorily with routine behavior and self care. As noted in the VA examinations of record, the Veteran was capable of performing his own activities of daily living. The evidence of record demonstrates that the Veteran's anxiety disorder has been more appropriately characterized as 30 percent disabling, rather than as 0 percent disabling, throughout the pendency of this claim. 

However, the preponderance of the evidence of record demonstrates that the Veteran is not entitled to a disability evaluation in excess of 30 percent for his service-connected anxiety disorder at any time during the pendency of his claim. A higher disability evaluation of 50 percent is warranted when there is evidence of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R. § 4.130. 

The evidence of record does not reflect that the Veteran has suffered from symptomatology such as panic attacks, difficulty in understanding complex commands, impaired memory or difficulty in establishing and maintaining effective relationships due to his service-connected generalized anxiety disorder. The Board recognizes that the list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant a higher rating, rather than as an exhaustive list, and that the Board need not find all or even some of the symptoms to award a specific rating. Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). Rather, if the evidence shows that the Veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the criteria for a particular rating, the appropriate equivalent rating will be assigned. Id. at 443. In the present case, however, the evidence demonstrates that the Veteran has been found, at worst, to only suffer from intermittent periods of inability to perform certain tasks. The evidence does not demonstrate that his symptomatology of impaired sleep, anxiousness and depressed mood (all of which are contemplated by lower ratings) has resulted in occupational and social impairment so severe as to result in reduced reliability or productivity. As such, a higher disability evaluation of 50 percent is not warranted. 

The Board recognizes that the Veteran has endorsed intermittent suicidal thoughts without intent or plan. Suicidal ideation is a symptom listed in the rating criteria for a higher disability evaluation of 70 percent. 38 C.F.R. § 4.130. However, as addressed in the preceding paragraph, it is not the specific symptomatology listed in the rating criteria that is decisive, but rather, the overall degree of occupational and social impairment. There is no evidence to suggest that the Veteran suffers from occupational and social impairment so severe as to result in deficiencies in most areas of life, including thinking and family relations - the criteria necessary for a higher disability evaluation of 70 percent. Id. The record demonstrates that the Veteran has been married more than 60 years and that he has a good relationship with his children and grandchildren. As such, the Veteran's intermittent reports of suicidal thought and feelings of hopelessness fail to demonstrate that the Veteran is entitled to a higher disability evaluation of 70 percent. 

The Board recognizes that a number of serious symptoms, including impaired judgment, memory loss, disorientation to space, time and place and impaired thought processes were noted upon examination in February 2012. While this symptomatology would be suggestive of a higher disability evaluation, the examiner explained that the symptoms resulting in an impaired ability to learn new information and his disturbances in functioning for planning, organizing and sequencing were related to a nonservice-connected cognitive disorder. The examiner also explained that the Veteran's declining cognitive functioning had an impact on his daily functioning. It was the symptomatology such as anxiety, impaired sleep, and irritability that were associated with the generalized anxiety disorder. The remaining VA examiners of record have also consistently related the Veteran's memory problems to a cognitive disorder related to a vascular history. The record contains no evidence to suggest that the Veteran is entitled to service connection for a cognitive disorder or any preceding vascular condition. As such, this symptomatology cannot be considered when determining the appropriate disability evaluation to assign to the Veteran's service-connected generalized anxiety disorder. 

In reaching the above conclusions, the Board has also considered the GAF scores of record. GAF scores ranging from 55 to 61 have been assigned to the Veteran's service-connected generalized anxiety disorder during the pendency of this claim. The GAF is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV)). GAF scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). GAF scores ranging from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Therefore, the GAF scores of record support the assigned disability evaluation of 30 percent. 

The Board recognizes that the Veteran and his wife believe that a disability evaluation in excess of 30 percent is warranted in this case. As noted by the Veteran in a March 2012 statement, he believed a higher rating was warranted due to symptomatology such as impaired judgment and memory loss. However, as previously discussed, the preponderance of the medical evidence of record demonstrates that this symptomatology is secondary to a nonservice-connected cognitive disorder and not to the Veteran's service-connected generalized anxiety disorder. As such, this symptomatology does not demonstrate that a higher disability evaluation is warranted. While the Veteran appears to disagree with the finding that this symptomatology is not related to his service-connected psychiatric disorder, the evidence of record does not demonstrate that the Veteran is competent to offer such a complex medical conclusion. A layperson is generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997); see also Bostain v. West, 11 Vet. App. 124, 127 (1998) (citing Espiritu v. Derwinski, 2 Vet. App. 492 (1992) (a layperson without the appropriate medical training and expertise is not competent to provide a probative opinion on a medical matter, to include a diagnosis of a specific disability and a determination of the origins of a specific disorder)). As such, the statements and testimony provided by the Veteran and his wife fail to demonstrate entitlement to a disability evaluation in excess of 30 percent. 

The rating schedule represents as far as practicable, the average impairment of earning capacity. Ratings will generally be based on average impairment. 38 C.F.R. § 3.321(a), (b) (2011). To afford justice in exceptional situations, an extraschedular rating can be provided. 38 C.F.R. § 3.321(b). The Court has clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). First, the RO or the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

The Veteran's symptoms associated with his service-connected generalized anxiety disorder include nervousness, depression, impaired sleep and intermittent suicidal thoughts without plan or intent. However, such impairment is contemplated by the rating criteria. See 38 C.F.R. § 4.130, Diagnostic Code 9400. This code allows for a higher disability evaluation upon a showing of worsening symptomatology. Therefore, the rating criteria reasonably describe the Veteran's disability and referral for consideration of an extraschedular rating is not warranted. There is also no evidence of frequent hospitalization or occupational impairment above and beyond that contemplated by a 30 percent disability evaluation. 

Based upon the guidance of the Court in Hart v. Mansfield, 21 Vet. App. 505 (2007), the Board has considered whether a staged rating is appropriate. However, as outlined above, the Veteran's symptomatology has not warranted a disability evaluation in excess of 30 percent at any time during the pendency of this claim. As such, staged ratings are not warranted. 

Affording the Veteran the full benefit of the doubt, the Board concludes that a disability evaluation of 30 percent is warranted prior to January 6, 2011. See 38 U.S.C. § 5107(b). To this extent, the Veteran's claim is granted. However, the preponderance of the evidence is against the claim of entitlement to a disability evaluation in excess of 30 percent for a generalized anxiety disorder at any time during the pendency of this claim. To this extent, the claim must be denied. 

Hearing Loss

The Veteran was originally granted service connection for left ear hearing loss in a September 1948 rating decision. A noncompensable (0 percent) disability evaluation was assigned, effective as of June 16, 1948. In September 2008, VA received a claim from the Veteran seeking a higher disability evaluation for his left ear hearing loss and seeking service connection for right ear hearing loss. Service connection was subsequently granted for right ear hearing loss in an August 2009 rating decision. However, the 0 percent disability evaluation was continued for the Veteran's now bilateral hearing loss. A timely notice of disagreement was received from the Veteran in August 2009, but the 0 percent disability evaluation was continued in an October 2010 statement of the case. The Veteran appealed this decision to the Board in November 2010. 

Under applicable laws and regulations, the rating assigned for hearing loss is determined by a mechanical application of the rating schedule, which is grounded on numeric designations assigned to audiometric examination results. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). 

Specifically, evaluations of hearing impairment range from 0 to 100 percent based on organic impairment of hearing acuity. Auditory acuity is gauged by examining the results of controlled speech discrimination tests, together with the results of pure tone audiometric tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hz). To evaluate the degree of disability, the rating schedule establishes 11 auditory acuity levels ranging from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85 Tables VI and VII, as set forth following 38 C.F.R. § 4.85, are used to calculate the rating to be assigned. 38 C.F.R. § 4.85. 

Under 38 C.F.R. § 4.86, when the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000 and 4000 Hz) is 55 decibels (dB) or more, Table VI or Table Via is to be used, whichever results in the higher numeral. 38 C.F.R. § 4.86(a). Additionally, when the pure tone threshold is 30 dB or less at 1000 Hz, and 70 dB or more at 2000 Hz, Table VI or Table VIa is to be used, whichever results in the higher numeral. Thereafter, that numeral will be elevated to the next higher Roman numeral. 38 C.F.R. § 4.86(b). 

The record contains a report from the Sears Hearing Aid Center. According to a note accompanying this report, the Veteran was tested in April 2008 and found to have a bilateral moderate high frequency hearing loss. He was fit binaurally for hearing aids at this time. The audiogram revealed pure tone thresholds, in decibels (dB), to be:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
30
40
40
LEFT
20
35
40
50
50

Pure tone threshold averages, therefore, were 32.5 dB for the right ear and 43.75 dB for the left ear. 

The Veteran was afforded a VA audiometric examination in November 2008. He reported that his hearing problems gave him trouble in most situations. Audiological evaluation revealed pure tone thresholds, in decibels (dB), were as follows:






HERTZ



500
1000
2000
3000
4000
RIGHT
15
20
30
50
45
LEFT
10
30
35
60
70

Pure tone threshold averages were noted to be 36.25 dB for the right ear and 48.75 dB for the left ear. Speech audiometry revealed speech recognition ability of 92 percent in both ears. Applying these results to 38 C.F.R. § 4.85, Table VI, the Veteran's right and left ear hearing losses are assigned numeric values of I and I. These test scores, when applied to Table VII, demonstrate that the Veteran's bilateral hearing loss was properly rated as 0 percent disabling as of this time. 38 C.F.R. § 4.85. 

The record also contains a VA audiology note dated November 2008. The Veteran was noted to have a pure tone threshold average of 35 dB in the right ear and 45 dB in the left ear. Masked word recognition ability was noted to be excellent. 

The Veteran was afforded another VA audiometric examination in March 2010. The Veteran reported hearing loss and ringing in both ears that caused him difficulty with understanding. The examiner was unable to obtain consistent pure tone responses even when following re-instruction. Speech audiometry revealed speech recognition ability of 92 percent in both ears, however. 

According to an August 2010 VA outpatient treatment record, the Veteran noticed no change in his hearing since his last hearing test of March 2010. The Veteran was diagnosed with normal hearing, bilaterally, at 250 to 1000 Hz, sloping to a mild sensorineural hearing loss at 2000 to 4000 Hz. An April 2011 VA audiology note also indicates that there was no significant change in the Veteran's hearing since his last test. 

The Veteran was afforded an additional VA audiometric examination in July 2011. Audiological evaluation revealed pure tone thresholds, in dB, to be:





HERTZ



500
1000
2000
3000
4000
RIGHT
20
25
40
50
55
LEFT
20
30
45
65
65

Pure tone threshold averages were 42 dB for the right ear and 51 dB for the left ear. Speech audiometry revealed speech recognition ability of 88 percent in the right ear and of 84 percent in the left ear. The Veteran denied that his hearing loss impacted his ordinary conditions of daily life or his ability to work at this time. Applying these results to 38 C.F.R. § 4.85, Table VI, the Veteran's right and left ear hearing losses are assigned numeric values of II and II. These test scores, when applied to Table VII, demonstrate that the Veteran's bilateral hearing loss was properly rated as 0 percent disabling as of this time. 38 C.F.R. § 4.85. 

The Veteran was most recently afforded a VA audiometric examination in February 2012. Audiological evaluation revealed pure tone thresholds, in dB, to be:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
30
35
55
55
LEFT
20
35
50
70
65

Pure tone threshold averages were 44 dB for the right ear and 55 dB for the left ear. Speech audiometry revealed speech recognition ability of 90 percent in the right ear and of 82 percent in the left ear. The Veteran reported that his hearing impairment affected his everyday life in that he had problems answering the telephone and understanding what was being said to him. He also indicated that his hearing loss made his "nerves act up." Applying these results to 38 C.F.R. § 4.85, Table VI, the Veteran's right and left ear hearing losses are assigned numeric values of II and IV, respectively. These test scores, when applied to Table VII, demonstrate that the Veteran's bilateral hearing loss was properly rated as 0 percent disabling as of this time. 38 C.F.R. § 4.85. 

The preponderance of the above evidence demonstrates that the Veteran has not been entitled to a compensable disability evaluation for his bilateral hearing loss at any time during the pendency of this claim. The Veteran's average pure tone thresholds and speech recognition scores, when applied to Tables VI and VII at 38 C.F.R. § 4.85 consistently demonstrate that the criteria for a compensable disability evaluation have not been met. As already noted, the rating assigned for hearing loss is determined by a mechanical application of the rating schedule, which is grounded on numeric designations assigned to audiometric examination results. Lendenmann, 3 Vet. App. at 349. 

The Board recognizes that the Veteran believes he is entitled to a compensable disability evaluation for his bilateral hearing loss. The Veteran has reported difficulty with his hearing throughout the pendency of his claim. However, VA has conceded this fact in granting service connection. What has not been established is that the Veteran has pure tone threshold averages or speech recognition scores of sufficient severity to warrant a higher disability evaluation. The Veteran's testimony fails to establish this fact. 

The Board notes that, in Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007), the United States Court of Appeals for Veterans Claims (Court) held that, in regard to VA audiological examinations, in addition to dictating objective test results, a VA audiologist must also fully describe the functional effects caused by a hearing disability in his or her final report. Significantly, however, the Board points out that the Court's rationale for requiring an examiner to consider the functional effects of a Veteran's hearing loss pertained to cases where consideration of referral for an extra-schedular rating under 38 C.F.R. § 3.321(b) might be warranted. Specifically, the Court noted that, "unlike the rating schedule for hearing loss, § 3.321(b) does not rely exclusively on objective test results to determine whether a referral for an extra[-]schedular rating is warranted. The Secretary's policy [requiring VA audiologists to describe the effect of a hearing disability on a Veteran's occupational functioning and daily activities] facilitates such determinations by requiring VA audiologists to provide information in anticipation of its possible application." Id. During the February 2012 VA examination, the Veteran reported that his hearing loss impaired his functionality by making it difficult to answer the telephone and by making it so he could not understand what was being said to him. 

However, impaired hearing is contemplated by the rating criteria. See 38 C.F.R. § 4.85, Diagnostic Code 6100. This code allows for a higher disability evaluation upon a showing of worsening symptomatology. Therefore, the rating criteria reasonably describe the Veteran's disability and referral for consideration of an extraschedular rating is not warranted. There is also no evidence of frequent hospitalization or significant occupational impairment due to this condition. 

Based upon the guidance of the Court in Hart v. Mansfield, 21 Vet. App. 505 (2007), the Board has again considered whether a staged rating is appropriate. However, as outlined above, the Veteran's hearing loss has not been so significant as to warrant a compensable disability evaluation at any time during the pendency of this claim. As such, staged ratings are not warranted. 

The Board notes that the Veteran also reported that being unable to hear caused his nerves to "act up." However, as clearly noted in the previous section, the Veteran is already service-connected for a generalized anxiety disorder. His assigned rating has been based in part on his feelings of anxiety and nervousness. As such, to assign a higher disability evaluation for bilateral hearing loss based on the same symptomatology would be cumulative. Pyramiding, the evaluation of the same manifestation of a disability under different diagnostic codes, is to be avoided. 38 C.F.R. § 4.14. 

Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable. The Veteran's claim of entitlement to a compensable disability evaluation for bilateral hearing loss must be denied.




 (CONTINUED ON NEXT PAGE)
ORDER

A disability evaluation of 30 percent for a generalized anxiety disorder, prior to January 6, 2011, is granted. 

A disability evaluation in excess of 30 percent for a generalized anxiety disorder is denied. 

A compensable disability evaluation for bilateral hearing loss is denied. 


REMAND

Skin Disorder

The Veteran was originally granted service connection for a skin disorder (impetigo contagiosa) in a July 1948 rating decision. A 10 percent disability evaluation was assigned, effective as of June 16, 1948. In November 2008, VA received a claim from the Veteran seeking a higher disability evaluation for his skin disorder. However, the RO denied this claim in an August 2009 rating decision. A timely notice of disagreement was received from the Veteran in August 2009, but the 10 percent disability evaluation was continued in an October 2010 statement of the case. The Veteran appealed this decision to the Board in November 2010. 

The Veteran's skin condition of the face is presently rated under Diagnostic Code 7813 for dermatophytosis. This code instructs the rater to rate this condition as disfigurement of the head, face or neck under Diagnostic Code 7800. The Board notes that on September 23, 2008, VA amended certain criteria for evaluating the skin. See 73 Fed. Reg. 54,708 (Sept. 23, 2008). These amendments are only effective for claims filed on or after October 23, 2008, or in cases where the Veteran has requested review under the "new" rating criteria. In the present case, the Veteran's claim was received in November 2008. Thus, the revised rating criteria in effect as of October 23, 2008, are applicable. 

Under Diagnostic Code 7800 (disfigurement of the head, face or neck) a 10 percent evaluation is warranted for one characteristic of disfigurement. 

A 30 percent evaluation is warranted for visible or palpable tissue loss and either gross distortion or asymmetry of one feature or paired set of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with two or three characteristics of disfigurement. 

A 50 percent evaluation is warranted with visible or palpable tissue loss and either gross distortion or asymmetry of two features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with four or five characteristics of disfigurement. 

A 80 percent evaluation is warranted with visible or palpable tissue loss and either gross distortion or asymmetry of three or more features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with six or more characteristics of disfigurement. 

Note (1) of this section lists the 8 characteristics of disfigurement for purposes of evaluation under 38 C.F.R. § 4.118. These are: 

(1) A scar of 5 or more inches (13 or more centimeters (cm)) in length; 

(2) A scar of at least one-quarter inch (0.6 cm) wide at widest part; 

(3) Surface contour of a scar is elevated or depressed on palpation; 

(4) A scar is adherent to the underlying tissue; 

(5) The skin is hypo- or hyper-pigmented in an area exceeding six square inches (39 sq. cm); 

(6) The skin texture is abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches (39 sq. cm); 

(7) The underlying soft tissue is missing in an area exceeding six square inches (39 sq. cm); 

(8) The skin is indurated and inflexible in an area exceeding six square inches (39 sq. cm). 

38 C.F.R. § 4.118 (2011). 

The Veteran was last afforded a VA examination for his skin condition in April 2010. Therefore, it has been more than 2 years since the Veteran's last examination. The duty to conduct a contemporaneous examination is triggered when the evidence indicates that there has been a material change in disability or that the currently assigned disability rating may be incorrect. See Caffrey v. Brown, 6 Vet. App. 377, 381 (1994); see also Snuffer v. Gober, 10 Vet. App. 400, 403 (1997) (holding that a Veteran is entitled to a new examination after a 2 year period between the last VA examination and the Veteran's contention that the pertinent disability had increased in severity). The Board notes that the passage of time, in and of itself, does not trigger the need for a new examination. See Palczewski v. Nicholson, 21 Vet. App. 174 (2007). However, the April 2010 VA examination fails to offer sufficient information to permit a proper disability evaluation to be assigned under Diagnostic Code 7800. Namely, there is no discussion of scarring, and as such, the Board cannot consider how many, if any, characteristics of disfigurement affect the Veteran. A new VA examination that fully comports with 38 C.F.R. § 4.118, Diagnostic Code 7800 (2011) must be performed. 

In addition, the most recent evidence of VA medical treatment of record appears to be dated April 2009. Records prepared since this time must be obtained and incorporated into the claims file. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). Expedited handling is requested.)

1. Obtain records of VA Medical Center (VAMC) treatment prepared since April 2009. All records that are obtained must be incorporated into the claims file. 

2. Schedule the Veteran for a VA examination before an appropriate specialist to determine the severity of the Veteran's service-connected tinea barbae of the facial area and any associated scarring. The Veteran's claims file and a copy of this remand must be made available for review by the assigned examiner prior to the scheduled examination. The examiner is asked to perform all indicated tests and studies, and describe in detail all symptomatology associated with the Veteran's tinea barbae. 

The examiner should also note if there is any scarring associated with this disability. If so, the examiner should measure the length and width of each scar and determine whether the scarring is elevated or depressed on palpation, adherent to underlying tissue, hypo - or hyper-pigmented in an area exceeding six square inches, of abnormal texture in an area exceeding six square inches, whether underlying soft tissue is missing in an area exceeding six square inches and whether the skin is indurated and inflexible in an area exceeding six square inches. 

3. The RO/AMC should then review the claims file and all additional development to ensure that the mandates of this remand have been satisfied. If additional development is deemed necessary, these steps should be taken prior to returning this case to the Board. 

4. After completion of the above, the claim should be reviewed in light of any new evidence. If the claim is not granted, the Veteran should be furnished an appropriate supplemental statement of the case (SSOC) and be afforded an opportunity to respond. Thereafter, the case should be returned to the Board for appellate review. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
J. A. MARKEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs